**Donald Wayne GREEN,
Petitioner-Appellant,**

v.

**Robert CHRISTIANSEN, Warden, Federal Correctional Institution, Lompoc, California, Respondent-Appellee.**

**No. 82–5718.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 7, 1983.

Decided May 8, 1984.

John F.M. Rodriguez, Altadena, Cal., for petitioner-appellant.

Laurie Levenson, Robert L. Brosio, Asst. U.S. Attys., Los Angeles, Cal., for respondent-appellee.

Before SCHROEDER and CANBY, Circuit Judges and HOFFMAN,* District Judge.

CANBY, Circuit Judge.

Donald Wayne Green appeals from the district court's dismissal of his habeas corpus petition for failure to exhaust administrative remedies. The underlying facts are not in dispute. Green was released from custody before the expiration of a federal sentence imposed in 1974. Almost two and one-half years later, federal authorities dis-

covered their error in permitting his release. Green was thereupon rearrested and reincarcerated in federal prison. We reverse the dismissal of the habeas petition and remand with instructions.

## FACTS

On January 7, 1974, appellant was sentenced by the United States District Court for the Eastern District of California to a term of 15 years for bank robbery and use of a dangerous weapon, a concurrent term of 2 years for possession of an unregistered firearm, and a concurrent term of 2 years for possession of a firearm not identified by serial number. The court recommended that the sentences run concurrently with any time that appellant might have to serve in state custody.

On January 31, 1975, after appellant had been sentenced by the Superior Court of the State of California for Tulare County to a concurrent term of six months to life for assault with a deadly weapon upon a peace officer, the California Department of Corrections placed a detainer on Green at the United States Penitentiary, McNeil Island, Steilacoom, Washington. On March 9, 1976, Green was released from federal prison to the custody of the California Department of Corrections for concurrent service of the state and federal sentences.

On April 6, 1978, the California Department of Corrections wrote the United States Marshal inquiring whether the Marshal wished to place a "HOLD" on Green. The United States Marshal replied, stating, "We do not wish to place a hold on this individual."

On November 8, 1978, Green was paroled from custody of the California Department of Corrections. On November 8, 1979, he successfully completed state parole.

On March 4, 1981, after federal authorities discovered that Green had been released before finishing service of his federal sentence, they caused Green to be arrest-

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

ed ·on an escape warrant and incarcerated him in a federal correctional institution for service of the remainder of his federal term.

Exhibits attached to the petition indicate that Green's original mandatory release date on his federal sentence was August 22, 1983. After his re-arrest, his mandatory release date was calculated to be December 15,. 1985.

## ISSUES

Green raised three issues on the merits, all three of which were correctly dealt with by the magistrate and the district court: (1) whether the government waived, or is estopped from asserting, any right whatever to reincarcerate Green after his inadvertent release; (2) whether Green is entitled to full credit against any unexpired portion of his sentence for the time during which he was at liberty following his erroneous release; and (3) whether he was entitled to an evidentiary hearing. Green also raises a final, procedural question: (4) whether the district court, having agreed with Green on issue (2), should have granted the writ to the extent of directing the prison authorities to award him credit for time at liberty, rather than dismissing for lack of exhaustion. On that issue, we conclude that Green is entitled to prevail.

## DISCUSSION

*Waiver and Estoppel*

■ Green's first contention need not detain us long. The prison authorities had the power to recommit Green after he was released by mistake so long as his sentence would not have expired had he remained in confinement. *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir.1930). A ministerial mistake does not necessarily excuse Green from serving the rest of his sentence. *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir.1982).

■ Green relies on cases holding that the government has waived the right to reincarcerate when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in its aftermath. *Farley v. Nelson*, 469 F.Supp. 796, 801 (D.Conn. 1979); *Esquivel v. Estelle*, 426 F.Supp. 619, 621 (W.D.Tex.1976), aff'd mem., 547 F.2d 309 (5th Cir.1977) (per curiam). We do not think that the inadvertence of a marshal in failing to place a detainer on Green meets the requisite standard of misconduct; the omission amounts to mere negligence at worst. It therefore does not constitute a waiver. *See Bailey v. Ciccone*, 420 F.Supp. 344 (W.D.Mo.1976); *United States v. Vann*, 207 F.Supp. 108 (E.D.N.Y.1962).

■ Nor does Green present the kind of a case that led us to hold the government estopped from reincarcerating an erroneously released prisoner in *Johnson v. Williford*, 682 F.2d 868 (9th Cir.1982). Estoppel requires that: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury. *Id.* at 872 (quoting *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970)). In *Johnson*, the prisoner had been led to believe through eight successive administrative reviews, that he was to be eligible for parole at the time that he was released. His expectations were created and heightened by this process. No such expectation was built up in Green by the simple failure to place a detainer on him. Nor did the government so mislead Green that it would be improper to charge him with constructive knowledge that he still had time to serve. *See Johnson v. Williford*, 682 F.2d at 872. Green therefore fails to meet the second and third elements required to give rise to an estoppel.

# 1400

## Credit for Time at Liberty

 The federal authorities therefore had the power to reincarcerate [1] Green so long as his sentence would not have expired had he never been released. Green is correct, however, in his alternative contention that he must be given full credit toward his federal sentence for the time that he was at liberty. The magistrate and the district court so ruled.[2] The governing principle was set forth in *White v. Pearlman*, 42 F.2d 788 (10th Cir.1930):

> A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments.... [W]here a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, ... his sentence continues to run while he is at liberty.

*Id.* at 789. We adopted this formulation in *Smith v. Swope*, 91 F.2d 260 (9th Cir.1937).

The government contends that Green ought not to be entitled to credit for the time spent on release because he was guilty of misconduct leading to criminal charges while he was at liberty. The nature of the asserted misconduct is not clear from the record and would doubtless require an evidentiary hearing to delineate. We conclude, however, that any such misconduct should not have the effect of depriving Green of full credit toward his federal sentence. It is true that offenses committed by a prisoner while on parole may cause him to lose credit for the time on parole. *See* 28 C.F.R. § 2.52 (1983). But the prisoner who is on parole knows that his parole time is at risk, and regulations so specify. His parole conditions are carefully called to his attention. Green, who appeared to have been released unconditionally and who was not subject to supervision, had no such notice. Under those circumstances, neither regulations nor simple fairness justify the imposition of a penalty to which Green never knew he was subject. He remains, of course, subject to any independent criminal penalties that may attach to his behavior while at liberty, and that is enough.

We conclude, therefore, that Green is entitled on this record to be given full credit for the time that he spent at liberty through the inadvertence of agents of the government and through no fault of his own. It follows from that conclusion that Green's request for an evidentiary hearing was properly denied by the district court.

## Exhaustion

The final issue is whether Green's habeas corpus petition was properly dismissed for failure to exhaust administrative remedies. We believe it was improperly dismissed.

 The government argues correctly that exhaustion of administrative remedies is a prerequisite to the filing of a habeas corpus petition in parole matters. *Ruviwat v. Smith*, 701 F.2d 844 (9th Cir.1983). The government contends further that Green's demand for sentence credit is a matter relating to his date of parole and, therefore, is within the discretion of the United States Parole Commission. *See* 28 C.F.R. § 2.18 (1983). If, in fact, Green's request for sentence credit was a parole matter we would agree. As we have explained, however, Green's entitlement to credit is not subject to anyone's discretion. Nor was Green ever on federal parole. While any sentence recomputation may affect his parole date, it is only a collateral effect and

---

1. Green contends that it was improper to arrest him on a spurious escape charge, since a warrant could have been obtained on a showing of the fact that he had been erroneously released from a sentence as yet unexpired. We need not reach the question whether use of the escape warrant entitled Green to release, because he will be released as a result of our ruling that he is entitled to credit for time at liberty. Moreover, Green failed to assert his improper arrest as a ground for release before the district court,

and consequently may not raise it here. *E.g., Scott v. Pacific Maritime Ass'n*, 695 F.2d 1199, 1203 (9th Cir.1983).

2. Indeed, in one part of its response to the petition, the government even asserted that Green would be entitled to claim credit for the time at liberty "as if he had been incarcerated" for that period.

does not bring the credit decision within the parole board's authority.

In addition, the Parole Commission's only authority to grant credit for time spent in the community is limited to granting credit to a federal parolee for "time spent under supervision." 28 C.F.R. § 2.52(c) (1983). The mandatory release date is not controlled by the Commission. "A prisoner shall be mandatorily released by operation of law at the end of the sentence imposed by the court less such good time deductions as he may have earned." 28 C.F.R. § 2.35(a) (1983).

Because Green was not under federal parole supervision at any time, the Parole Commission had no authority to grant credit for time Green spent in the community. Under the facts of this case, credited time was a matter for the district court. We have concluded that appellant should be given full day for day credit for the time he spent on erroneous release. We reverse the dismissal of the petition and remand to the district court for an order requiring the prison authorities to grant such credit and recalculate his release date accordingly.

REVERSED and REMANDED.