[Crim. No. 12147. Fourth Dist., Div. Two. Apr. 11, 1980.]

In re JAMES MESSERSCHMIDT on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, and Richard Lennon, Deputy State Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Michael D. Wellington, Deputy Attorneys General, for Respondent.

OPINION

GARDNER, P. J.—██ Petitioner, a prison inmate, was ordered released by mistake. Just how this occurred is academic. While he knew a mistake had been made, he did not cause it and was without fault. He remained at large 203 days before being returned to prison. He now wants credit for that 203 days against his remaining sentence. The Department of Corrections has declined to give him that credit. Petitioner filed a petition for writ of habeas corpus in the superior court which, after a hearing, denied the petition. After petitioning this court unsuccessfully, he filed a similar petition in the Supreme Court which ordered that an alternative writ be issued by this court. We have done so and now deny the petition.

Under Penal Code section 2900, a prison term begins upon delivery of the prisoner to the prison. That section further provides that if thereafter he is temporarily released, such time is not to be computed as part of his term. Now petitioner urges this court to establish a rule that when a prisoner is mistakenly released from confinement, he is entitled to credit against his prison term for the period during which he remained free. We decline to establish any such rule.

Petitioner relies on a series of federal cases (*White* v. *Pearlman* (10th Cir. 1930) 42 F.2d 788; *Lanier* v. *Williams* (E.D.N.C. 1973) 361 F.Supp. 944; and *Shelton* v. *Ciccone* (8th Cir. 1978) 578 F.2d 1241) which hold that in certain factual situations elementary principles of due process demand that a mistakenly released prisoner receive credit against his prison term for the time he has been erroneously at large. In these cases due process is interpreted to mean fundamental fairness and fair play and governs situations in which the mistakenly released prisoner peacefully reestablishes himself as a productive member of the community only to have his good works destroyed by reincarceration after many years.

We have no argument with the rationale of the cases on which petitioner relies. However, we decline to distort that rationale into a blanket rule under which every prisoner mistakenly released from confinement is entitled to credit for time he remains free. Unfortunately for the petitioner, the facts of this case do not bring him within the principles of fundamental fairness or fair play envisioned in the cases on which he relies.

The petitioner engages in a lively and prolonged discussion of the above cases and the "waiver" or "credit" theory on which these cases are based. However, two hypothetical situations will explain the distinction better than any allegedly profound analysis of the cases.

Prisoner one when mistakenly released, returns to his home and family, and, over a prolonged period of time, becomes a respected, productive, law-abiding member of society. He violates no law, is gainfully employed, supports his family, pays his bills and his taxes, is active in community affairs. Then the prison officials discover their mistake and attempt to reincarcerate him. There is a fundamental unfairness in allowing a prisoner who has established himself as a productive member of society over a long period of time to have his good work destroyed by recommitment.

Prisoner two when mistakenly released, sets out on a one-man reign of terror. He robs, cheats, steals, burgles, rapes and molests young children. When he is finally apprehended, he is the kingpin of a network furnishing heroin to school children. As to this prisoner, there is obviously nothing fundamentally unfair in denying him dead time credit for time spent on his one-man crime wave.

At the hearing before the superior court, that court found that the defendant did not "innocently reintegrate into the community." This is a masterful piece of understatement. During his 203 days at large, he was briefly (6 days) employed. He served a sentence for petty theft. At the time of his apprehension, he was under investigation for other criminal activity. When requested by prison authorities, he refused to provide any information concerning his activities while at large. Rather obviously, there is no denial of due process in denying this petitioner credit against his remaining prison term for those 203 days of freedom. Actually, it takes more than a touch of chutzpah to demand this relief. The only surprising thing about this case is that petitioner does not ask for good time/work time credit for the time he was at large.

It is not a denial of due process to deny petitioner credit for this 203 days against his remaining sentence.

Petition for writ of habeas corpus denied.

McDaniel, J., and Morris, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied June 4, 1980. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.