FILED
United States Court of Appeals
Tenth Circuit

December 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JERRY LOUIS HUGHES,

        Petitioner - Appellant,

v.

JOHN OLIVER, Warden,
USP Florence-High,

        Respondent - Appellee.

No. 14-1297
(D.C. No. 1:14-CV-01442-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

Jerry Louis Hughes, a federal inmate proceeding pro se, appeals the dismissal

of his 28 U.S.C. § 2241 petition, claiming his due process rights were violated when

he was mistakenly released from custody and reincarcerated after spending almost a

year at liberty. Mr. Hughes also contends the government should be estopped from

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

enforcing the remainder of his sentence. We have jurisdiction under 28 U.S.C. § 1291 and affirm the dismissal of Mr. Hughes' habeas petition.

I

On October 4, 2004, Mr. Hughes was sentenced to 135 months in prison after pleading guilty to armed bank robbery and associated offenses. The government appealed that sentence, and on January 30, 2006, Mr. Hughes was resentenced to 346 months in prison. Thereafter, according to Mr. Hughes, prison officials repeatedly informed him that he would be released in 2012 and, consistent with that representation, released him on May 14, 2012. But a year later, on May 29, 2013, Mr. Hughes appeared at a supervised-release revocation hearing and was told that he had been released by mistake. He was remanded to federal custody and continues to serve out the remainder of his sentence.

In his habeas petition, Mr. Hughes claims the government violated his due process rights and should be equitably estopped from enforcing the rest of his sentence. The district court dismissed the petition, however, ruling that these arguments were foreclosed by *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930), which acknowledged the government's power to recommit a mistakenly released inmate whose sentence would not have expired if he had remained in confinement. The district court concluded that since Mr. Hughes' sentence would not have expired during the year he had been mistakenly released from custody, there was no constitutional violation. The court also observed that Mr. Hughes could have sought

- 2 -

credit for the time he spent at liberty, but he did not request that relief; instead, he simply requested to be released altogether.

On appeal, Mr. Hughes maintains that his due process rights were violated and the government should be estopped from enforcing the rest of his sentence. We review the dismissal of Mr. Hughes' habeas petition de novo, *see Weekes v. Fleming*, 301 F.3d 1175, 1176-77 (10th Cir. 2002), and find both arguments unavailing.

II

A.  Due Process

Mr. Hughes' due process claim is premised on executive action of government officials. Such action violates due process "'when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 & n.8 (1998)). At least one court has observed that mistaken releases resulting in reincarceration occur "too frequently . . . to raise any presumption of arbitrariness in the constitutional sense," *Hawkins v. Freeman*, 195 F.3d 732, 744 (4th Cir. 1999) (en banc) (internal quotation marks omitted); *see also Vega v. United States*, 493 F.3d 310, 317 (3d Cir. 2007) (finding no due process violation based on erroneous release and reincarceration, and looking to common law for right to credit for time spent erroneously at liberty). Indeed, we recognized long ago that "[t]here is no doubt of the power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained

in confinement." *White*, 42 F.2d at 789. Mr. Hughes' sentence would not have expired if he had remained in confinement, and thus his due process rights were not implicated when the government recommitted him.

Nevertheless, Mr. Hughes insists that the government's apparent negligence justifies his release. He cites cases evaluating whether there was government "action 'so affirmatively wrong or [] inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction.'" *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (quoting *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) (per curiam)). The problem with this argument, however, is that the standard that Mr. Hughes relies upon "fails to embody the full stringency of the [*Lewis*] standard's requirement that to be 'conscience-shocking,' 'arbitrary in the constitutional sense,' an executive act must be not only 'wrong,' but egregiously so by reason of its abusive or oppressive purpose and its lack of justification by any government interest." *Hawkins*, 195 F.3d at 744 (citing *Lewis*, 523 U.S. at 844-54).

Mr. Hughes alleges that he was mistakenly released after prison officials gave him incorrect information that he would be released in 2012. While this conduct may suggest negligence, it does not manifest the type of conscience-shocking action necessary to sustain his claim. *See Espinoza*, 558 F.3d at 90 (holding that government mistake was "simply part of life" and did not suggest any "arbitrariness

or capriciousness by any government actor"). Thus, Mr. Hughes cannot prevail on his due process claim.

B. Estoppel

Mr. Hughes also contends the government should be equitably estopped from enforcing the rest of his sentence. To prevail on this claim, Mr. Hughes must satisfy the traditional elements of estoppel and also show "affirmative misconduct on the part of the government; mere erroneous advice will not do." *Wade Pediatrics v. Dep't of Health & Human Servs.*, 567 F.3d 1202, 1206 (10th Cir. 2009) (internal quotation marks omitted).[1] On this score, Mr. Hughes' claim fails because there was no affirmative government misconduct here. Mr. Hughes alleges only that he was given erroneous advice at his unit-team meetings, "which is . . . insufficient to warrant estoppel against the government." *Id.* at 1207; *see also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 64 (1984) ("The fact that [the government agent's] advice was erroneous is, in itself, insufficient to raise an estoppel . . . ."). *But see Johnson v. Williford*, 682 F.2d 868, 872-73 (9th Cir. 1982)

---

[1] The traditional elements of estoppel are:

> (1) the party to be estopped must have known the facts; (2) that party must have intended that its conduct would be acted on or must have acted such that the party asserting estoppel had a right to believe it was so intended; (3) the asserting party must have been ignorant of the true facts; and (4) the asserting party must have relied on the other party's conduct to his injury.

*Wade Pediatrics v. Dep't of Health & Human Servs.*, 567 F.3d 1202, 1206 (10th Cir. 2009).

(holding, without discussing separate element of government misconduct, that government was estopped from revoking parole of inmate who was incorrectly advised at eight administrative reviews that he was eligible for parole).  Accordingly, Mr. Hughes cannot show that the government should be estopped from enforcing the rest of his sentence.

C.  Possibility of a Credit for Time Spent Erroneously at Liberty

Finally, it may be that Mr. Hughes is entitled to a credit on his sentence under the common law doctrine of time spent erroneously at liberty.  *See White*, 42 F.2d at 789 ("A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments.").  But because Mr. Hughes does not raise that issue, we do not decide it.  Mr. Hughes asserts that the government should be precluded from enforcing the rest of his sentence, and *White* forecloses that possibility.

III

The judgment of the district court is affirmed.  Mr. Hughes' motion to proceed on appeal in forma pauperis is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge