**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRY K. ARTHUR,

    Plaintiff - Appellant,

v.

J. MOOREHEAD, Warden,

    Defendant - Appellee.

No. 18-1346
(D.C. No. 1:17-CV-00734-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Terry K. Arthur, a federal inmate proceeding pro se[1], appeals the district

court's denial of his 28 U.S.C. § 2241 application for a writ of habeas corpus.[2] His

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We construe Mr. Arthur's pleading liberally because he is proceeding pro se. _United States v. Pinson_, 584 F.3d 972, 975 (10th Cir. 2009).

[2] Mr. Arthur challenges the execution of his federal sentence under 28 U.S.C. § 2241. Accordingly, we do not require a certificate of appealability. _Montez v. McKinna_, 208 F.3d 862, 867 (10th Cir. 2000) (citing _McIntosh v. U.S. Parole Com'n_, 115 F.3d 809 (10th Cir. 1997)).

application challenges the U.S. Marshals' authority to take him into custody. He also challenges the decision of the Federal Bureau of Prisons (BOP) to deny his nunc pro tunc request. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Terry K. Arthur escaped from a Florida state penitentiary while serving a 20-year sentence for robbery with a firearm. While on the lam, Mr. Arthur robbed several banks in Tennessee and North Carolina. He was arrested in Michigan. Michigan charged Mr. Arthur with several crimes, including being a fugitive.

As Mr. Arthur sat in a Michigan county jail, Florida and federal law-enforcement authorities issued warrants for his arrest. First, the Florida Department of Corrections issued a warrant requesting that Michigan hold Mr. Arthur "as a fugitive from justice until such time" that he may be returned "to the State of Florida in order that he may be required to serve the remainder of his . . . sentence." R. at 61. Soon thereafter, the United States District Court for the District of North Carolina issued a warrant for Mr. Arthur's arrest. In turn, the U.S. Marshals Service filed a detainer in Michigan requesting that Michigan notify the Marshals when Mr. Arthur was released. Eventually, Michigan dismissed all charges against Mr. Arthur, and the Marshals immediately arrested him.

Mr. Arthur began his trek through the federal system. He was charged, convicted, and sentenced in four separate federal cases in U.S. district courts in Tennessee and North Carolina. In total, Mr. Arthur received a federal sentence of 505 months of imprisonment. The BOP projects that Mr. Arthur will complete his federal

2

sentence on November 10, 2025. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 7, 2019).

As Mr. Arthur proceeded through the federal system, the Florida Department of Corrections filed a detainer with federal authorities. The letter accompanying the detainer requested that, when appropriate, Mr. Arthur be released to Florida so that he could be returned to the "Department of Corrections to continue serving the uncompleted portion of his sentence." R. at 97. The letter noted that it was not intended "to interfere in any way with local charges." *Id*. Thus, it is anticipated that Mr. Arthur will be returned to Florida once he completes his federal sentence.

In 2016, Mr. Arthur filed a request for an administrative remedy with the BOP. Mr. Arthur argued that the State of Florida had exclusive primary jurisdiction over him "once the State of Michigan dismissed their [c]harges." *Id*. at 107. According to Mr. Arthur, his "release to Federal Custody without a [w]rit or [w]ritten [a]greement was erroneous." *Id*. To remedy this error, Mr. Arthur requested a nunc pro tunc order designating the Florida Department of Corrections as his place of confinement. The BOP denied Mr. Arthur's request. Mr. Arthur appealed this denial to the BOP's Regional Office and the BOP's Central Office. Both offices denied his appeal.

On March 23, 2017, Mr. Arthur filed a § 2241 application for a writ of habeas corpus in the U.S. District Court for the District of Colorado. As pertains here, Mr. Arthur argued that federal authorities violated his due process rights when they arrested him. Mr. Arthur claimed that Florida had primary jurisdiction over him and, when Michigan released him, federal authorities were required to obtain "a written

3

request for temporary custody or a writ of habeas corpus ad prosequendum" before taking him into custody. R. at 7. Mr. Arthur also argued that the BOP erroneously denied his nunc pro tunc request.

The district court denied Mr. Arthur's application. The court held that once Mr. Arthur escaped, the State of Florida lost primary jurisdiction over him. Thus, federal authorities properly arrested him even though they did not file a writ of habeas corpus ad prosequendum. The court also held that the BOP did not abuse its discretion when it denied Mr. Arthur's request for a nunc pro tunc designation. Mr. Arthur timely appealed. *Id*. at 158-162, Fed. R. App. P. 4(a)(1)(B).

## DISCUSSION

We review de novo the district court's dismissal of Mr. Arthur's § 2241 application. *Abernathy v. Wandes*, 713 F.3d 538, 544 (10th Cir. 2013). Mr. Arthur makes two arguments on appeal: (1) that federal authorities violated his due process rights when they took him into custody without getting permission from Florida, and (2) that the BOP erroneously denied his request for nunc pro tunc designation. We will separately consider each of these arguments.

### I. Mr. Arthur does not have a right to select which sovereign first takes him into custody.

Mr. Arthur argues federal authorities violated his due process rights by taking him into custody without getting permission from Florida. To that end, he claims that "[o]nce Michigan dismissed all charges," Florida regained primary jurisdiction over him, and the Marshals were required to request permission from Florida—through a

4

writ of habeas corpus ad prosequendum—before taking him into custody. Appellant's Opening Br. at 3.

The problem with Mr. Arthur's argument is that he does not have the right that he claims was violated. "If [a defendant] has violated the laws of both sovereigns, he is subject to prosecution by both, and he may not complain of or choose the manner or order in which each sovereign proceeds against him so long as his constitutional rights in each trial are not violated." *Rawls v. United States*, 166 F.2d 532, 534 (10th Cir. 1948). In other words, "question[s] of conflicting jurisdiction between a State and a Federal Court . . . confer[] no rights whatever upon a defendant who had violated the laws of both sovereigns." *Craig v. Hunter*, 167 F.2d 721, 722 (10th Cir. 1948). Mr. Arthur violated the laws of at least two sovereigns: Florida and the United States. Mr. Arthur has no right to select which one arrests him first.

Even if we assumed that Florida had primary jurisdiction over Mr. Arthur—which it did not[3]—it would not change our analysis. In such a case, it would be Florida's right to contest Mr. Arthur's arrest by federal authorities. Mr. Arthur cannot

---

[3] Mr. Arthur relies on *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930) to advance his claim that Florida retained primary jurisdiction over him. We acknowledge that *Pearlman* held that a prisoner's sentence continues to run even when he is discharged from a penal institution. *Id*. at 789. But this rule only applies when a prisoner is released from a penal institution "without any contributing fault on his part." *Id*. The rule does not apply when a prisoner escapes. *Id*. Thus, *Pearlman* does not apply to Mr. Arthur's case and Florida lost primary jurisdiction over Mr. Arthur when he escaped. *See Soukas v. Thomas*, No. 08-867-TC, 2009 WL 1346252 at *2 (D. Ore. May 13, 2009).

pick that fight. Accordingly, the district court correctly rejected Mr. Arthur's argument that he was illegally arrested by federal authorities.

## II. The BOP properly denied Mr. Arthur's request for a "nunc pro tunc" designation.

Mr. Arthur's second argument is that the BOP erroneously denied his nunc pro tunc request. Mr. Arthur wants the BOP to issue a nunc pro tunc order designating his place of confinement as Florida. He believes that such an order will make his federal and state sentences run concurrently. Mr. Arthur is not entitled to such an order.

While we review de novo the district court's dismissal of Mr. Arthur's § 2241 application, we review for abuse of discretion the BOP's decision to deny a nunc pro tunc request. *Heddings v. Garcia*, 491 F. App'x 896, 898-99 (10th Cir. 2012). That means that we will affirm unless we have a "definite and firm conviction" that the BOP "exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986).

BOP Program Statement 5160.05 provides that the BOP may designate "a state institution for concurrent service of a federal sentence." BOP Program Statement 5160.05 § 1. The statement also provides that an inmate "may request a nunc pro tunc (i.e., occurring now as though it had occurred in the past) designation" listing a state institution as his place of confinement. *Id*. § 9(b)(4). But the BOP is not obligated to grant such a request and should certainly not do so when an inmate is ineligible for such a designation. *See id*. § 9(b)(4)(a) ("However, there is no obligation . . . for the

Bureau to grant [a nunc pro tunc] request by designating a state institution retroactively as the place to serve the federal sentence.").

Mr. Arthur relies heavily on § 9(b)(3) when he argues that he is eligible for a nunc pro tunc designation. That subsection reads:

> The court may, from time to time, order concurrent service of the federal sentence at some time after its imposition. This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition.

*Id*. § 9(b)(3). But Mr. Arthur misunderstands the factual scenario that the subsection contemplates.

To explain, when a state has primary custody over an inmate, federal authorities can only temporarily "borrow" the inmate for prosecution or sentencing. *Beers v. Maye*, 611 F. App'x 933, 935 (10th Cir. 2015). Custody will not change between the two sovereigns, and federal authorities must return the inmate to state custody once prosecution or sentencing is complete. *Id*. If the federal sentencing record is silent on the matter, the BOP will designate a federal facility as the inmate's place of confinement. BOP Program Statement 5160.05 § 7(b). Thus, the inmate's federal sentence will not begin until the state sentence is finished, and the inmate returns to federal custody.

Program Statement 5160.05 § 9(b)(3) comes into play when the federal sentencing court desires the state and federal sentence to run concurrently but fails to recognize that the inmate will be returned to state custody immediately after the federal sentencing hearing. In that case, § 9(b)(3) permits a nunc pro tunc order

7

designating the state facility as the place of confinement. The retroactive order will ensure that the inmate receives credit toward his federal sentence for the time spent in state confinement. But that is not the case here.

Program Statement § 9(b)(3) cannot help Mr. Arthur because he has not served a single day in state custody after receiving his federal sentence. He has been solely in federal custody. Accordingly, a nunc pro tunc designation would only do him harm. If his place of confinement was designated as the Florida Department of Corrections, Mr. Arthur's federal sentence would not start until Florida had taken him into custody. As a result, the decades spent in federal custody would be erased and he would have to start serving his federal sentence anew. This, undoubtedly, is not Mr. Arthur's desire. Thus, as the BOP correctly determined, Mr. Arthur is not eligible for a nunc pro tunc designation as outlined in Program Statement 5160.05.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of Mr. Arthur's § 2241 application for a writ of habeas corpus.

Entered for the Court

Gregory A. Phillips
Circuit Judge

8